Oral argument not to exceed 15 minutes per side. Mr. Piper the second for the plaintiff appellant. May it please the court William Piper appearing on behalf of the plaintiff appellant David Payne. I'd like to reserve two minutes for rebuttal. Fine. This is an of an age and race discrimination case in a downsizing matter. For purposes of background because it's important in this case for Mr. Payne's qualifications. He was 61 years old on May 4th, 2018. He had worked 18 years for Benteler. His performance reviews during the entire time were either acceptable, meets expectations, average performer. He had very few disciplinary actions. He had one in October of 2001 for first step attendance which is four points on an eight point scale. Another one in August 2004 for first step attendance. Another one in November 2004 for first step attendance. Then in 2006 he got a commendation for perfect attendance. Then he didn't have any other disciplinary actions whatsoever until August of 2015 when he got a disciplinary action for not calling in an absence 30 or more minutes before he was supposed to. So that was it. And he had zero attendance points on May 4th of 2018 and no obviously no disciplinary actions in the past year which is supposedly what the defendant was looking at. There were apparently comments in his record that he did the bare minimum of work and that he didn't volunteer to take on new tasks and things like that. So it was a mixed, it was not the star employee. I would agree with you. He was an average employee. Of course you've probably heard this before but the laws against discrimination protect the average employee. So I'm not claiming he was the best employee in the plan. I'm claiming he was an average employee who had a very good attendance record, kept his nose clean. He's claiming age discrimination and reverse discrimination in favor of people from Burma or Myanmar. So we have had two cases, Pio and Papirez. They're unpublished cases but both of them involving different employees but with the same claims. Our court has rejected those claims. So what makes your case different? Well the reason, I disagree with the findings in those cases and this is jumping way ahead from where I expected to be but in all of those cases at the district court level the court did not even identify any comparator, even identify the comparator by name or analyze the qualifications of the Mr. Payne. It didn't do that in the Pio case at the district court level and it didn't do that in the Papirez case at the district court level. The same thing unfortunately occurred at the appellate levels in the Pio and Papirez case. You're not going to find anywhere in the opinions, either at the district court level or at the appellate court level where the courts even identify any of the comparators by name or actually engage in an analysis or a comparison, if you will, between the qualifications of all of those individuals and particularly in this case Mr. Payne and any of the comparators. I submit to your honor that if someone actually did that they would find that for purposes of a prima facie case Mr. Payne's qualifications were superior, which is all you need to show to get a prima facie case, than 15 or so comparators that I identified in the brief. And with respect to the pretext issue that his qualifications were significantly better, if you read one of the cases from the Sixth Circuit, or plainly superior, which is what another court said from the Sixth Circuit should be the test. But the problem is the district court and quite frankly the district court didn't engage in any analysis. As I said, the district court didn't even identify any of the comparators or make a direct comparison and that's what you have to do. So at the prima facie case level, the standard is set forth in Barnes v. Gencorp, a 1990 case, and it says quite plainly, a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to that of a younger co-worker working in the same position as the plaintiff. The court erred, I think, because it quoted a sentence from Thompson v. Fresh Products that said retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case. The problem is it overlooked or it didn't understand the next sentence which said if Thompson could show that she was more qualified than Brown, just one competitor employee, Brown's retention might serve as evidence that Thompson was singled out because of her age. But Thompson does not claim that her qualifications were superior. Here I'm claiming not just one person that Mr. Payne was superior, I'm claiming 15 as I set forth and there was no comparison or analysis of any of those, between Mr. Payne and any of those 15 employees. You presented that evidence to this district judge in this case? Absolutely. I presented it, I mean it must have been 10 to 15 pages, if not more, of the qualifications of those individuals. Was this vis-a-vis the age discrimination claim or the reverse? It was both. I acknowledged in my brief that the age discrimination case certainly has a lot more evidence that I can marshal in my favor, but particularly in this case, the race discrimination case has it too. Just to move on, I want to get to my point on the Ash v. Tyson Foods, which is a case from the U.S. Supreme Court. The court acknowledged that a plaintiff, where qualifications are used, and qualifications are used to establish a pretext when you have either a promotion issue or a downsizing issue. You look at the relative qualifications of a comparator or comparators and the plaintiff. The court said in Ash v. Tyson Foods that superior qualifications alone can establish pretext, and it left it to the lower courts to establish what the test should be. As I indicated, the courts in the 6th Circuit have said in Bender v. Hecht's department serves significantly better as a standard, and then in Provenzano v. LCI Holdings, it said plainly superior. If I were to go with anything, I would go with plainly superior because it has some parallelism when you have with a prima facie case, you have to show superior. It probably makes a nice flow to go with a prima facie case, plainly superior. It just makes it a little bit easier for analysis. But at any rate, in establishing both the prima facie case and the pretext, all you have to do is just look at the qualifications of some of these other folks. Again, Mr. Payne was an average employee who had only four disciplinary actions, and none of those little comments ever amounted to disciplinary action. If they were really serious, you'd think that they would amount to disciplinary action. What I'm going to cover here is disciplinary actions against a number of these folks. Jose Zamora was 27 years old, so obviously significantly younger than Mr. Payne, who was 61. In March of 27, he had a third step warning for attendants. April 27, a warning for burn holes. September 27, a third step warning for attendants. October 2017, another third step warning for attendants. November 2017, another third step warning. Did the employer provide any evidence as to what its reasons were for selecting your client for the RIF? The assertion in the defendant's defense was production and attitude. Very vague. The only actual testimony I got was from Joan Talbot, one of the supervisors, who said, leaving his work area limited to production goals, or something like that. That doesn't even make any sense if you read it together. There's really nothing to analyze here. At any rate, in my brief, like I said, it's covered over 15 pages, you have these people who are way, way less qualified than Mr. Payne. Continuing on with Mr. Zamora, he was rated as a 12, which is below average performer, one of the worst in the plant. He was on a performance improvement plan at the time, the May 4 layoffs occurred. He had five third step warnings, which is seven points on an eight point scale. Mr. Payne had no points at all. Is your position then that even if the employer has given what they say is their legitimate reason, which is, as I understand it, poor performance and negative attitude of your client, that then you have come forward with pretext by showing one employee, let's take this one that you've picked out, Zamora, and if you show that that employee had his own performance issues, are you saying that that is enough then to warrant denial of summary judgment? I'm not saying he also had employment issues. I'm saying for purposes of the prefacial case, Mr. I'm saying assume we get to pretext. Yes, with pretext, if I can show that Mr. Payne was significantly better or plainly superior, then yes, that shows pretext. I think I did that with 15 different employees. Another one is John Bragg, 37 years old. He was caught sleeping twice by the supervisor Talbot. He had numerous quality and production warnings. He had 15 third step warnings for attendance. He had a first step warning on May 3, 2017. He was not rated any better. It's not exactly the same for productivity. Talbot said attendance is bad and productivity low. Again, it's not even close. Mr. Payne had four warnings in his entire career. This guy had probably up to 30 or 40. Payne has let go and Bragg has kept. Another one, Jack Koeffler, poor, bad parts, safety. Counsel, you seem to think that the qualifications are very quantifiable or identifiable. Maybe you can simply look at the, I don't know if this is your argument, personnel files and see how various employees were rated. Based upon that, determine who was more qualified or who was a better or worse employee. That's the end of the discussion. I guess you're saying then that intangible qualities, loyalty of the employee, enthusiasm, effort, some of those things can be taken into account. I don't know if you're saying that or not. But then there are also potentially other factors. Maybe the employer wanted to lay off certain people because the jobs they did were less in need at that time. Or they wanted to reconstitute the workforce based upon who was in certain departments or certain people, certain categories of employee, depending upon what their function might be at the place of employment. They might need some more than the others. But I guess you're saying that none of that entered into this riff and it was just a matter of treating the employees like they were automatons that you look at them on a list, but wait a minute, both of us can't talk at the same time. You just look at them on a list and you just cut some off and then you just make a determination. Did the riff say that these had to go and the others didn't have to go? So this automatic process is what you're claiming, I guess, was how it was determined which employees would be kept and which were let go. I'm very anxious to answer your question if you give me an opportunity. Well I just stopped talking so you now have the opportunity. Excellent. I compared, in my comparison analysis, Mr. Payne to machine operators. All were machine operators. So we're not talking about comparing a welder to someone else. All of these people were machine operators. So what I'm saying is that Mr. Payne, for purposes of establishing a premium facia case and pretext, was superior, plainly superior, to all of these employees who had, compared to Mr. Payne, horrendous work records. And yeah, there were some little criticisms in there, as Judge Moore pointed out, but none of that rose to the level of actual documented warnings. If it was that bad, you'd think there would be some warnings. I'd like to close with this. This idea that someone could say, well, we just don't like his productivity or whatever. I'm quoting from the Bender v. Sex Department Stores case. It says, at page 627, if a fact finder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the fact finder can legitimately infer that the employer consciously selected a less qualified candidate, something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture. I submit to the court that the 15 comparators that I submitted all have way, way worse records than Mr. Payne. A jury, a fact finder, could certainly conclude that the reasonable employer would have found that Mr. Payne was significantly better qualified. And therefore, it should go to a jury. Thank you. And you just don't find any analysis. The court doesn't even name the people, much less do a comparison between Mr. Payne and the comparators. There's just, it doesn't exist. Thank you. Good morning, your honors, and may it please the court. Christina McDonald on behalf of Eppley-Bentler Automotive Corporation. Your honors, I'd like to start by addressing a few points that my brother counsel made, and then proceed with my argument unless the court has earlier questions. I do want to address for the court, Mr. Piper's representation just now that all of the comparators to Mr. Payne were machine operators. That is most certainly false. For example, on page 36 of his brief on appeal, he cites material handlers as part of the comparator evidence. And really this, your honors, cuts to one of the most important points, and that's the evidence that's presented by Mr. Payne in this case. Really the evidence in this case falls in two buckets. There's Mr. Piper's statistical evidence affidavit, and there are the comparators that he's offered. There's no other evidence in this case. Mr. Piper points out in his brief that this case is, quote, at its essence, a circumstantial comparator evidence case, end quote. That's at his brief at page 30. An important observation for the court to make is that in his affidavit, the statistical analysis, he lists ages of employees who were considered or not considered for termination and categories that he developed himself based on deposition testimony of who was terminated from various job titles at the Butler Kalamazoo plant. He argues in his brief, but does not explain in his affidavit, that in deciding which employees were considered for termination, he went by job category, material handler, which is a forklift driver, welder, machine operator. Those job titles were important to him in making his statistical analysis. But when it comes to doing his comparators, the job titles apparently no longer matter. He lists some job machine operators, which is the same title Mr. Payne held, but he also lists setters, forklift drivers, and welders. They're not even in the same job. Your opponent has mentioned two names, Jose Zamora and John Bragg. Can you, so I assume that he's, you know, picking them out specifically. Are they both machine operators? They're not, Your Honor. Mr. Bragg is a setter. A setter. And what, so they do different work? They do, Your Honor. And how about Zamora? Zamora is a machine operator. So why, let's then just focus on Zamora. He's young. He had, according to your opponent, Mr. Payne was significantly better, plainly superior to Zamora. If we were to look at the record and to say your opponent is correct, would we have to say that it's, that summary judgment should have been denied? No, Your Honor. And that is for two reasons. The first biggest reason is like this court in Papillage, that's how you say that funny name, Papillage, the case that was decided just a few months ago, pointed out, attitude was one of the criteria that Bentler utilized in making its decisions of who should stay and who should go in the reduction in force. And there's ample evidence for that in the record. The comparator evidence that Mr. Payne points to doesn't include attitude or consider attitude whatsoever. He's painting for the court a partial picture. And more than that, he's including counselings that happened both before the decisional time period and after. So he admits that the decision makers deciding which ones of these average employees, because we're all talking about average employees here, right? It's very easy for the decision makers to pick the high achievers to stay and the very low performers to go. We're talking about kind of the middle. And in making those decisions, they look, they decided to look at objective data for a one-year look-back period. So you can't consider what happened after the reduction in force took place or after the decisions were made, which is included in his comparator evidence. And you also can't include write-ups and those kinds of things in personnel files that were before that period because that wasn't in front of the decision makers. So your honor, if we look at just the one-year period that was actually relevant in this case, excluding attitude because that's not addressed in the comparator evidence presented before the court, we know that Mr. Zamora did not have any active performance safety or conduct counselings in that spring of 2018 and Mr. Payne had one. And what was Payne's counseling for? No, no, no failure to call in, like a no call, no show, call in late. Mr. Zamora did have slightly lower performance score than Mr. Payne, but he had just successfully completed a performance improvement plan and was doing good work. That's in the personnel evidence there. And looking at Mr. Payne's personnel records, your honor, it's very clear that his performance was not stellar, as by his own admission just now. The 2017 performance appraisal that Bentler did rely on in making its decision, the only performance appraisal Bentler relied on in making its selection criteria states, quote, David only does what he's instructed to do. He needs to apply himself with more work. And in the subcategories of that personnel appraisal, your honor, they divide them into things like initiative, work performance, job knowledge, teamwork. Mr. Payne only scored a one out of three in initiative, meaning he does only what he's specifically instructed to do. For teamwork, he scored a one out of three. Usually cooperates, needs help listening to and working with others, which is consistent with Bentler's selection criteria based on attitude. So with respect to those types of things, are you representing then that Zamora did not have equally or even lower record on that one year performance evaluation? No, your honor. He did have a lower performance overall score. I don't have in front of me his specific subcategories and I can't make that representation. So it's sort of hard to, just thinking about Zamora, he was put on a PIP and he, you say he successfully completed it, but obviously he had done something to require that he be put on a performance improvement plan. Yes, your honor. I would agree with that. If he was on a plan, he needed to be on a plan. He successfully completed the plan and his attitude was determined by the Bentler decision makers to be better than that of Mr. Payne, which is supported by the record evidence. Are you saying the attitude is sort of an objective criteria? Because the worry would be that an employer would say, oh, so and so, this employee that we want to get rid of, he has a bad attitude, so we're going to get rid of him on the riff. Isn't it great that we're doing a riff? We can get rid of people we don't like. And one of the reasons why we don't like Payne is because he's 61 and he's obviously not as fast as somebody who's 35. I'm making these things up, but the fear is that an employer can use these subjective criteria to engage in age discrimination. Your honor, I would point the court to the actual tests that the courts have to apply to be sure that that kind of discrimination doesn't happen in a riff. And that's exactly the test that the district court applied in this case and that both the PIO and PAPIASH courts applied, utilizing and reviewing the exact same comparator evidence, the exact same statistical analysis that's presented in this case. And going to those tests, your So at the prima facie standard, we both agree that the heightened burden on the fourth prong of the prima facie case applies. So the plaintiff has to show some additional direct circumstantial or statistical evidence that he was singled out for termination because of his age. That kind of evidence is not presented and the district court properly concluded that Mr. Court Judge Neff talked at length about the statistical evidence that was presented and determined that it did not show a significant disparity and made no attempt to eliminate the most common non-discriminatory reasons for any kind of an average age difference. In this case, those would be the reduction in force itself, the legitimate selection criteria used or chance. He immediately jumps to bias. And the courts in Anderson, Thompson, Brown and Schoonmaker all, and Barnes, excuse me, all make clear that you have to provide some kind of analysis in your statistics to make them probative in order for a jury to use that evidence to find some kind of a genuine issue of material fact. So the district court determined his statistical evidence was insufficient. At that point, Bentler is entitled to show the legitimate non-discriminatory reason for his termination or selection for the reduction in force in this case. And Bentler is amply provided and met that standard, Your Honor. His performance appraisal, the comments, the reason given for his selection, his poor attitude and work performance is documented. Once Bentler offers that second prong burden, then it's up to Mr. Payne to show that there was pretext. So now we're talking about the tests that the court must use in deciding whether the comparator evidence is probative of discrimination or not. And in order for those comparator evidence to be probative, Your Honor, Mr. Payne has to show that Bentler's decision either had no basis in fact, and these tests are set forth in the Thompson, Bender and Brown v. Kelsey Hayes case, either that they had no basis in fact in that they were false, which of course isn't the case because they're documented in his personnel files, and his supervisor's testimony was consistent with those comments. Two, that they did not actually motivate the conduct or an alternative test for that second prong, Your Honor, is that the illegal motivation would be more likely. There's nothing here to suggest that illegal motivation was more likely. Or three, that the reasons given were insufficient to warrant the action. So if Mr. Payne could show that at least one comparator was an equivalent job description and at least one comparator was less qualified than he, would that establish pretext? No, Your Honor. Ample case law says that the fact that a younger employee was retained and an older employee terminated in and of itself is insufficient to establish a genuine issue of material fact. In fact, on that question as to what the test is for those comparators in the pretext analysis, the Bender court sets forth what test the court should apply. And that test is, was the plaintiff better qualified than the comparators, which is really what Mr. Payne is saying in this case, is he's arguing he was better qualified. And if you're going to use the better qualified standard, there has to be other probative evidence of discrimination. And in most cases, Your Honor, that's going to be discriminatory motive, perhaps direct evidence, a history of treating older people worse at the plant, discriminatory or ageist comments, none of which are present in this case. Well, suppose an employer, suppose an employer is going to do a RIF and they have 30 people that need to be let go. And suppose it turns out that all of the people who are let go are above 40 and that there are many people who are retained who are under 40. Would that not be enough if the people are, in fact, comparators, if they're all machine operators that have similar performance reviews? In other words, they're all average employees. That would not be enough, Your Honor, because they have to be better qualified and the qualifications have to relate to the selection criteria. And the selection criteria in this case include performance reviews, attendance points, safety records, quality records for the year prior. Attitude, performance are important. And that's consistent across deposition testimony from the plant manager, the HR director, the production unit leaders who are involved in selecting employees. And Mr. Payne himself doesn't dispute that that was the criteria the decision makers used. And going back to the test, Your Honor, that Bender sets forth on these comparator pretexts. So there has to be either the first part is better qualifications plus other evidence or the test that because he has no other evidence that Mr. Payne urges the court to consider is are they plainly superior? Well, he hasn't presented to the court and didn't present to the district court that any of these employees were plainly superior. The reason is that he wholly ignores attitude, which is what the Papayage court focused on. The Papayage court jumped right to the pretext analysis. So while you'll find a discussion of the Prima Fascia case in the full McDonnell Douglas burden shifting analysis in PIO, Papayage assumed he meant Prima Fascia case, jumped right to pretext and said they wholly ignore attitude, which is something that the supervisors who actually selected these people relied upon and observed on a day-to-day basis. The plant manager said I want the people who are going to be the best team, the best workers, the best part of the team to be part of my reduced plant going forward. And that's exactly what the decision makers did, Your Honor. My time's up. Thank you. If Mr. Payne had a bad attitude, why did he have any disciplinary actions during his entire 18-year career for his attitude? It just doesn't exist. The defendant also gave you some bad information about the law. The fact is that you can use comparator evidence alone to establish a Prima Fascia case and you can use comparator evidence alone to establish pretext. That's set forth in law. I've already gave you some bad information about the facts. The defendant said that Mr. Payne had a disciplinary action within a year of the termination, which is what they said the criteria was. That's false. The last disciplinary action he had was in 2015. He had no disciplinary actions in the year prior to his termination. Jose Zamora was rated a 12 below Mr. Payne's 15. The 12 was one of the worst in the plant. Within a year of the termination, if you want to use that and not look at anything else, he had a third-step warning for attendance in September 2017, a third-step warning for attendance in October 2017, a third-step warning for attendance in November 2017, a third-step warning again for attendance in mid-March of 2017. Crystal Blake, she was 39, a machine operator. She had a performance improvement plan in April of 2017, a first-step warning for conduct in February of 2018. Isaias Leo, age 36, he had a second-step warning for attendance in July of 2017, a third-step in July of 2017. There was a discussion regarding excessive machine errors he had in September 2017, a first-step warning for using a cell phone on the floor in April of 2018. Noone Flewe, who was a Burmese employee, a second-step warning in December 2017. She was a machine operator. A second-step, that was for a burn hole, a third-step warning for a burn hole in January of 2018, and a first-step warning for attendance in March of 2018. I could go on and on. The light has been on. It's all in the brief. The one thing I finally would like to mention is that you can search far and wide in the district court's opinion. There is no comparison. So she's saying, well, just his attitude is worse or whatever. It's not established by the record, but it's not in the court's opinion. There's no comparison made by the court. Thank you. Thank you both for your argument. The case will be submitted and the clerk may call the next case.